# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**DWAYNE M. MURRAY, in his capacity as
Chapter 7 Trustee for the Bankruptcy
Estate of Employers' Self Insurance Fund**          **CIVIL ACTION**

**Versus**

                                        **No. 14-310-JWD-RLB**

**CANNON COCHRAN MANAGEMENT
SERVICES, INC.**

## <u>RULING AND ORDER</u>

This matter came before the court on a Motion to Refer to the Bankruptcy Court Pursuant to 28 U.S.C. § 157 and LR83.4.1 (R.Doc. 17) filed by Plaintiff, Dwayne M. Murray, in his capacity as Chapter 7 Trustee for the Bankruptcy Estate of Employers' Self Insurance Fund; Federal Insurance Company's Motion to Dismiss (R.Doc. 18); Defendant, Navigators Specialty Insurance Company's Motion to Dismiss (R.Doc. 21); and Cannon Cochran Management Services, Inc.'s FRCP Rule 12(b)(6) Motion to Dismiss (R.Doc. 22). All motions were contested. Oral argument was heard on each of these motions on October 23, 2014.

After carefully considering the law, allegations of the Amended Complaint, and arguments of counsel, the Court denies the Motion to Refer to the Bankruptcy Court Pursuant to 28 U.S.C. § 157 and LR83.4.1 (R.Doc. 17). The Court grants Federal Insurance Company's Motion to Dismiss (R.Doc. 18) and Defendant, Navigators Specialty Insurance Company's Motion to Dismiss (R.Doc. 21). And the Court grants in part and denies in part Cannon Cochran Management Services, Inc.'s FRCP Rule 12(b)(6) Motion to Dismiss (R.Doc. 22).

### A. Allegations of the Complaint

Plaintiff is Dwayne Murray, Chapter 7 Trustee for Employers Self Insurers Fund ("ESIF"). ESIF is a group self-insurance fund for workers' compensation.

The three Defendants are Cannon Cochran Management Services, Inc. ("Cannon"), Federal Insurance Company ("Federal"), and Navigators Specialty Insurance Company ("Navigators") (collectively, "Defendants"). Navigators and Federal are Cannon's insurers. (Amended Complaint, R.Doc. 6, ¶¶ 9-10).

On June 13, 2002, Cannon's predecessor, Management Services USA, Inc. ("Management"), entered into a contract entitled "Service Agreement Between Employers Self Insurers Fund and Management Services USA, Inc." (the "Service Agreement"). (Amended Complaint, R.Doc. 6, ¶¶ 17-19). Under the Service Agreement, Management agreed to, among other things, serve as ESIF's third party administrator, coordinate and report to excess insurance carriers, communicate with ESIF's excess carriers on reportable claims and timely respond to excess carrier requests and perform and manage the daily business affairs of ESIF's self-insurance program. (Amended Complaint, R.Doc. 6, ¶¶ 21-22).

Plaintiff alleges that, pursuant to the Service Agreement between Management and ESIF, Management negotiated and obtained for ESIF certain excess workers' compensation and employers' liability reimbursement policies for the policy years 2002-2005 ("Excess policies"). (Amended Complaint, R.Doc. 6, ¶¶ 24-26). Under the excess policies, if the excess insurer was not given written notice of a claim within three years of when Plaintiff learned of the claim, the excess insurer's indemnity to Plaintiff would be reduced by forty percent (40%). (Amended Complaint, R.Doc. 6, ¶¶ 24-25).

Plaintiff has asserted five counts:

1)   The first count is for breach of contract against Cannon. Plaintiff claims that an employee (Richard Ryan) of an alleged member (Ryan Construction) of ESIF was injured during the course and scope of his employment on February 12, 2003,

triggering a workers' compensation claim and judgment by the workers' compensation court. (Amended Complaint, R.Doc. 6, ¶¶ 34). Plaintiff incurred over one million dollars in connection with the worker's compensation claim. (Amended Complaint, R.Doc. 6, ¶35). Plaintiff alleges Management received the claim around March 12, 2003, but did not report the claim to the excess policies' designated claims administrator ("Clarendon") until October 9, 2006, at the earliest. (Amended Complaint, R.Doc. 6, ¶¶ 32-.7). Because of the late notice, ESIF's excess insurer Clarendon stated it would reduce reimbursement to ESIF for the claim, but to date it has not paid any amounts. (Amended Complaint, R.Doc. 6, ¶¶ 39-40). Because of the failure to obtain reimbursement from the excess insurance policies, ESIF was forced to file bankruptcy. (Amended Complaint, R.Doc. 6, ¶ 47). Plaintiff claims Cannon and/or Management, breached the Service Agreement by providing late notice. (Amended Complaint, R.Doc. 6, ¶¶ 59-66).

2) The second count is for breach of contract against Cannon. Plaintiff claims that the excess policies Cannon and/or Management negotiated failed to comply with regulations concerning the amount of self-insured retention ("SIR"), which allegedly led to an inability to reach the SIR and obtain reimbursement from its excess insurer, and eventually to ESIF's bankruptcy (Amended Complaint, R.Doc. 6, ¶¶ 41-47). Plaintiff claims that this amounts to a breach of the Service Agreement. (Amended Complaint, R.Doc. 6, ¶¶ 67-74).

3) The third count is for aiding and abetting breach of fiduciary duties against Cannon. Specifically, Plaintiff claims that its administrator and board of trustees owed ESIF

fiduciary duties and that Cannon, through Management, aided and abetted the breach

of those duties. (Amended Complaint, R.Doc. 6, ¶¶ 49-58, 75-89).

4) The fourth count is against Navigators and Federal as Cannon's insurer. Specifically,

Plaintiff claims Federal and Navigators issued errors and omissions policy to Cannon

and/or Management which entitled Cannon to indemnification against one or more of

the claims asserted by Plaintiff. (Amended Complaint, R.Doc. 6, ¶¶ 91-93).

5) The fifth count is for unjust enrichment against Cannon. (Amended Complaint,

R.Doc. 6, ¶¶ 94-98).

**A. Motion to Refer (R.Doc. 17)**

Plaintiff moved to transfer this case to the bankruptcy court. Plaintiff explains that, when

he filed his Complaint, the Supreme Court had not yet rendered an opinion in *Executive Benefits*

*Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 134 S.Ct. 2165, 2172 (2014), which

clarified a bankruptcy court's authority to render final orders on "non-core" matters that are still

"related-to" bankruptcy proceedings. At oral argument, Plaintiff did not deny this Court's

authority to hear the case without transferring it to the bankruptcy court.

Defendants oppose the transfer. They argue that judicial efficiency would be better

served by keeping the case in the district court. Further, Cannon urges that this Court has

expertise in state law and that it would be denied a right to trial by jury in the bankruptcy court.

The Court denies the Plaintiff's motion to refer. Under the Supreme Court's decision in

*Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 134 S.Ct. 2165,

2172 (2014), proceedings that are "otherwise related to a case under title 11" can be heard by the

bankruptcy court, which then submits proposed findings of fact and conclusions of law to the

district court. The district court must then conduct a *de novo* review and enter any final orders

judgments. *Id.* The Court believes that judicial efficiency will be better served by keeping the case in this Court and trying the case in the first instance rather than sending it to the bankruptcy court and then having to review the issues *de novo*. The Court's conclusion is strengthened by the fact that this case involves solely matters of state law that do not require expertise in bankruptcy law.

**B. Cannon's Motion to Dismiss (R.Doc. 22)**

### 1. Rule 12(b)(6) standard

The Supreme Court has explained:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"

*Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Interpreting Rule 8(a) and *Twombly*, the Fifth Circuit explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Twombly*, 127 S.Ct. at 1965) (emphasis added). Later, in *In re Great Lakes Dredge & Dock Co. LLC.*, 624 F.3d 201, 210 (5th Cir. 2010), the Fifth Circuit explained:

> To avoid dismissal [under Fed.R.Civ.P. 12(b)(6)], "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To be plausible, the complaint's "[f]actual

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. [*Doe v. Myspace*, 528 F.3d 413, 418 (5ᵗʰ Cir. 2008)] (citing [*Hughes v. Tobacco Inst., Inc.*, 278, 278 F.3d 417, 420 (5ᵗʰ Cir. 2001)]). We do not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir.2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir.2005)); *see also Iqbal*, 129 S.Ct. at 1940 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

*Id.* at 215.

Analyzing the above case law, our brother in the Western District stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct. at 1949, *Twombly*, 555 U.S. at 556, 127 S.Ct. at 1965. This analysis is not substantively different from that set forth in *Lormand*, *supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. Rule Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257, *Twombly*, 555 U.S. at 556, 127 S.Ct. at 1965.

*Diamond Services Corp. v. Oceanografia, S.A. De C.V.*, No. 10-177, 2011 WL 938785, at *3

(W.D.La. Feb. 9, 2011) (citation omitted).

Afterward, in *Harold H Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787 (5ᵗʰ Cir. 2011),

the Fifth Circuit explained:

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A claim for relief is implausible on its face when

"the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."

*Id.* at 796 (citations omitted).  Finally, in *Thompson v. City of Waco, Texas*, 764 F.3d 500 (5th Cir. 2014), the Fifth Circuit recently summarized the Rule 12(b)(6) standard as thus:

We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff. We need not, however, accept the plaintiff's legal conclusions as true. To survive dismissal, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Our task, then, is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.

*Id.* at 502-503 (citations and internal quotations omitted).

### 2.  Overview of Cannon's Objections

Cannon objects to Plaintiff's Amended Complaint on several grounds.  First, Cannon argues that Plaintiff's claims are perempted or prescribed.  Cannon argues that this action is governed by La. R.S. 9:5606, which establishes a three-year peremptive period for claims against insurance agents, brokers, solicitors, and "other similar licensees."  Cannon then argues that, even if this statute does not apply, Plaintiff's claims are still prescribed because Plaintiff is asserting tort claims, not contract claims, so the action is governed by the one-year prescriptive period of La. Civ. Code art. 3492.

Second, Cannon argues that Plaintiff has failed to state a claim.  Cannon argues that the "notice prejudice" rule bars Plaintiff's claim for failure to timely report a claim to the excess insurer.  Cannon also argues that Louisiana law does not recognize a cause of action for aiding and abetting the breach of a fiduciary duty in the absence of a conspiracy.  Finally, Cannon argues that Plaintiff cannot assert a claim for unjust enrichment because it has other claims, even if they are prescribed.

### 3. Peremption under La.R.S. 9:5606

#### a.          Parties' Arguments and Ruling

According to Defendants, all claims related to Cannon's failure as a third-party administrator are time-bared pursuant to La. R.S. 9:5606, which provides:

§ 5606. Actions for professional insurance agent liability

A. *No action* for damages *against any insurance agent, broker, solicitor, or other similar licensee* under this state, *whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services* shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
…
D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

(emphasis added). Defendants claim that, here, the deadline to report the Ryan claim was March 12, 2006. The claim was reported on October 9, 2006 (Amended Complaint, R.Doc. 6, ¶ 37), and Cannon and Management acquired the Clarendon policies before this time in 2002-2005 (Amended Complaint, R.Doc. 6, ¶ 24,). ESIF filed for bankruptcy on October 17, 2012, and the Plaintiff filed the original complaint on May 19, 2014. Hence, Cannon argues, the claims are perempted.[1]

---

[1] Plaintiff argues that the filing of the bankruptcy petition interrupted the peremptive period. However, 11 U.S.C. § 108 provides:

(a) If applicable nonbankruptcy law … fixes a period within which the debtor may commence an action, *and such period has not expired before the date of the filing of the petition*, the trustee may commence such action only before the later of--

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) two years after the order for relief.

Plaintiff raises three defenses. First, the statute does not apply to third-party administrators like Cannon. Second, Cannon was not performing "insurance services." And third, courts are supposed to strictly construe preemption statutes against preemption in favor of allowing the claim.

The Court finds that La. R.S. 9:5606 operates as a bar to Plaintiff's second breach of contract claim for "negotiating and obtaining specific excess and aggregate excess worker's compensation and employers liability reimbursement policies that violated Louisiana law." (Amended Complaint, R.Doc. 6, ¶ 73). However, the Court will not at this time apply La. R.S. 9:5606 to Plaintiff's other breach of contract claim. Finally, because the Court dismisses on other grounds Plaintiff's claims for aiding and abetting a breach of fiduciary duty and unjust enrichment and under the Direct Action Statute, the Court declines to address whether La. R.S. 9:5606 applies to these causes of action.

**b.** Analysis of the Statute

In reaching its decision, the Court is guided by the principle that

under [Louisiana] law, prescriptive and peremptive statutes are to be strictly construed against prescription and peremption and in favor of the claim that is said to be extinguished. Of the possible constructions, the one that maintains enforcement of the claim or action, rather than the one that bars enforcement, should be adopted.

*Louisiana Health Service and Indemnity Company v. Tarver*, 93-2449 (La. 4/11/1994), 635 So.2d 1090, 1098; *Rando v. Anco Insulations Inc.*, 2008-1163 (La. 5/22/2009), 16 So.3d 1065, 1083. Thus, if there is any question as to whether La. R.S. 9:5606 applies to Management and Cannon, then the action must proceed.

---

Thus, the bankruptcy statute only interrupts prescription if "the period has not expired before the date of the filing" of the bankruptcy petition. Here, the 3-year period of La. R.S. 9:5606 would have expired, so claim would still be perempted if La. R.S. 9:5606 applied.

La. R.S. 9:5606 perempts actions *"against any insurance agent, broker, solicitor, or other similar licensee* under this state." The statute does not define "agent," "broker," "solicitor," or "other similar licensee." Moreover, the Complaint alleges that Management was a third party administrator. (Amended Complaint, R.Doc. 6, ¶ 21). Thus, the issue turns on the meaning of "other similar licensee" and whether a "third party administrator" can qualify as one.

In interpreting La. R.S. 9:5606, we are guided by the canon of construction of *ejusdem generis*, which is defined by Black's *Law Dictionary* (9th ed. 2009) as the canon "holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." *Black*'s continues: "For example, in the phrase *horses, cattle, sheep, pigs, goats, or any other farm animals*, the general language *or any other farm animals* — despite its seeming breadth — would probably be held to include only four-legged, hoofed mammals typically found on farms, and thus would exclude chickens." Thus, "other similar licensee" must be construed in conjunction with – and limited by – the meaning of "agent," "broker," and "solicitor."[2]

"Agents" "brokers," and "solicitors" are classified as "Insurance producers" in the Insurance Code. They are regulated in Part I (entitled "Producers") of Chapter 5 (entitled "Producers and Other Regulated Entities") of the Insurance Code. La. R.S. 22:1542 provides:

> (6) "Insurance producer" or "producer" shall mean a person required to be licensed under the laws of this state to <u>sell</u>, <u>solicit</u>, or <u>negotiate insurance</u>, and includes all persons or business entities otherwise referred to in this Code as "insurance agent" or "agent", or "insurance broker" or "broker", or "insurance solicitor" or "solicitor", or "surplus lines broker".

(emphasis added). "Solicit" and "negotiate" are further defined by La. R.S. 22:1542.

---

[2] The Court notes that Plaintiff's argument that Defendants were not performing "insurance services" is essentially the same as its argument that Defendants are not "other similar licensees." Both arguments are contingent on how much Third Party Administrators are like "agents," "solicitors," and "brokers."

(14) "Negotiate" shall mean to confer directly with or to offer advice directly to a purchaser, certificate holder, or enrollee, or prospective purchaser, certificate holder, or enrollee, of a particular contract of insurance, including certificates, riders, endorsements, or amendments, concerning any of the benefits, terms, or conditions of the contract if the person engaged in that act is an insurance producer who either sells insurance or obtains insurance from insurers for purchasers, certificate holders, or enrollees.
…
(17) "Solicit" shall mean to attempt to sell insurance or to ask or urge a person to apply for a particular kind of insurance from a particular insurer.

Thus, according to this statute, "agents," "brokers" and "solicitors," either sell, attempt to sell, or "confer directly with or … offer advice direct to" customers "of a particular contract of insurance … concerning any of the benefits, terms, or conditions of the contract."

While there is no definition of "agent" or "broker," the Court is guided by their ordinary meaning. *Black's Law Dictionary* (9th ed. 2009) provides:

*insurance agent*. (1866) A person authorized by an insurance company to sell its insurance policies. — Also termed producer; (in property insurance) recording agent; record agent. [Cases: Insurance 1604.] …
*special agent*. An agent whose powers are usu. confined to soliciting applications for insurance, taking initial premiums, and delivering policies when issued. — Also termed local agent; solicitor
…
*insurance broker*. (18c) Insurance. A person who, for compensation, brings about or negotiates contracts of insurance as an agent for someone else, but not as an officer, salaried employee, or licensed agent of an insurance company. • The broker acts as an intermediary between the insured and the insurer. — Also termed producer. [Cases: Insurance 1609.]
"The term 'insurance broker' is often used to characterize an individual who is thought to act primarily on behalf of a purchaser in an insurance transaction. This delineation ... is employed by some courts and writers even though almost all insurance brokers are actually compensated for their services through commissions that are paid by the insurers. Because brokers receive compensation from the insurer, it seems evident that a persuasive argument can be made for not treating a broker as an agent of the insurance purchaser." Robert E. Keeton & Alan I. Widiss, Insurance Law: A Guide to Fundamental Principles, Legal Doctrines, and Commercial Practices § 2.5, at 83–84 (1988).

*solicitor*. (15c) 1. A person who seeks business or contributions from others; an advertiser or promoter. 2. A person who conducts matters on another's behalf; an

agent or representative; … 5. See special agent under INSURANCE AGENT….
7. See special agent under INSURANCE AGENT.

Thus, each of these seems to be involved in the sale, negotiation, or procurement of insurance for customers.

Third Party Administrators are regulated not in Part I of Chapter 5 of the Insurance Code but in Part III, entitled "Third-Party Administrators."  Whereas "agents" and "brokers" have no statutorily defined duties, a "third-party administrator" is defined by La.R.S. 22:1641 as

> (1) "Administrator" or "third-party administrator" or "TPA" means any person, except an employee of a fund or plan that serves as an administrator, *who directly or indirectly* _solicits_ *or effects coverage of, underwrites, collects charges or premiums from, or adjusts or settles claims on residents of this state, or residents of another state from offices in this state, in connection with* life or health insurance coverage or annuities, or plans of self-insurance providing accident and health protection or *self-insurance of workers' compensation coverage*, or any individual, partnership, corporation, or other person who contracts directly or indirectly with a group self-insurance fund licensed pursuant to the provisions of R.S. 23:1195 et seq. to provide claims adjusting, underwriting, safety engineering, loss control, marketing, investment advisory, or administrative services to the fund or its membership, other than bookkeeping, auditing, or claims investigation services, except any of the following:[omitted as being inapplicable]

(emphasis added).  Thus, while Producers are limited to "selling," "soliciting," and "negotiating" insurance, third-party administrators can perform a host of functions, including "solicit[ing] or effect[ing] coverage of, underwrit[ing], collect[ing] charges or premiums from, or adjust[ing] or settl[ing] claims" as well as "safety engineering, loss control, marketing, investment advisory, … administrative services, other than bookkeeping, audit, or claims investigation services."

Significantly, there is some overlap in the statutory definitions between "solicit" and "negotiate" and the numerous functions that Third Party Administrator perform.  In fact, TPAs themselves "solicit" claims just as solicitors do.  That does not mean that La. R.S. 9:5606 was intended to encompass all activities that anyone licensed under the Insurance Code could possibly perform, for a TPA involves all aspects of managing and administering an insurance

company. Such a reading of "other similar licensee" would be too broad and would eliminate too many causes of action. However, the Court agrees with Defendant that too narrow of a reading of "other similar licensee" would render the phrase nugatory.

Thus, the Court finds that a "third party administrator" can be an "other similar licensee" for purposes of La. R.S. 9:5606 at least with respect to those functions a TPA performs that are similar to those performed by "agents," "brokers," and "solicitors." Accordingly, the Court must examine each of the breach of contract claims to determine whether it falls within the scope of La. R.S. 9:5606.

### c. Application of La. R.S. 9:5606

The first claim was for failure to timely report a claim to Clarendon. Counsel for Defendants asserted at oral argument that Cannon and/or Management were in fact providing the services of an insurance agent, broker, or solicitor for this cause of action. However, with Producers being limited to selling, negotiating, or soliciting insurance with customers; with a definition of "solicit" that means only to "sell"; and without any evidence in the record – expert or otherwise – as to what agents, brokers, solicitors, or TPAs do in fact, the Court cannot rule at this time that TPAs are "other similar licensees" for purposes of La. R.S. 9:5606 on the issue of failure to timely report a claim.

Defendant argues that this case is controlled by *Alliance Gen. Ins. Co. v. La. Sheriff's Auto. Risk Program*, 52 F.Supp.2d 711, 714, 720 (E.D.La. 1999), which applied La. R.S. 9:5606 to a TPA for plaintiff's cause of action that the defendant failed to timely report a claim. However, contrary to Defendant's assertions at oral argument, the discussion about La. R.S. 9:5606 in *Alliance* was dicta. The *Alliance* court granted defendant's motion for summary judgment and explained that, to prove breach of the duty to supply material information, the

insurer must show an intent to deceive, and the evidence showed otherwise. The *Alliance* court then stated:

> Any third-party claims that [defendants] may have against the third-party defendants [including the TPAs] are moot based on the granting of summary judgment in favor of [defendants]. However, in the interest of judicial fairness and efficiency the Court would like to address those claims and the fact that they would have been prescribed.

*Id.* at 719-720. Thus, the discussion regarding La. R.S. 9:5606 is not essential to the *Alliance* holding.

Further, even if it were, the Court would not be inclined to follow *Alliance*. At the time *Alliance* was decided, "Insurance broker" was defined by the Insurance Code under La.R.S. 22:1112(2) as "any person who, for compensation, acts or aids in any manner in negotiating contracts for insurance or *placing risks or effecting insurance* for a party other than himself." "*Effects coverage of*" is broad language currently in the statute defining TPAs, La.R.S. 22:1641, but this language is no longer in the statute governing Producers. Thus, *Alliance* is outdated under the current statutory structure and wording.

In sum, the Court finds that, at this time, there is simply not enough evidence to warrant a holding that failing to timely report a claim constitutes the services of a "agent," "solicitor," or "broker," such that this claim falls within the scope of La. R.S. 9:5606.

The Court, does, however, hold that the second breach of contract claim falls within the scope of La. R.S. 9:5606. As explained above, Producers "sell," "negotiate," and "solicit" insurance to customers. In Plaintiff's Amended Complaint, he specifically alleges for his second count that Cannon "breached the Service Agreement by *negotiating* and *obtaining* specific excess and aggregate excess workers compensation and employers liability reimbursement policies that violated Louisiana law." (R.Doc. 6, ¶ 73) (emphasis added). Thus, this breach of contract claim is directly rooted in the broker-like activities of improperly negotiating and

acquiring for a customer insurance policies. Thus, this breach of contract claim falls within the scope of La. R.S. 9:5606 and is thus perempted.

### d. Cannon and Management as "Producers"

Finally, Cannon submitted the sworn evidence of its Vice President, along with attached documents, purporting to prove that Cannon and Management were licensed producers. Thus, Cannon argues that all claims should be subject to La. R.S. 9:5606. However, as the Court explained at oral argument, the Court is not inclined at this time to convert this Fed.R.Civ.P. 12(b)(6) motion to dismiss to a motion for summary judgment. Further, even if it had, Cannon has failed to submit evidence, expert or otherwise, demonstrating that the first breach of contract claims is rooted in activities that are more closely associated with Producers than with Third Party Administrators such that they would fall under the type of conduct governed by La. R.S. 9:5606.

Federal, with its Reply Memorandum, attached what was purported to be a public record showing that Cannon was a licensed producer. (R.Doc. 34-1). Federal claims that the Court can take judicial notice of public records. *See, e.g., Meadows v. Odom*, 356 F.Supp.2d 639, 641 (M.D. La. 2005).

While the Court can take judicial notice of public records, the Court chooses not to do so at this time. Plaintiff objected to all external evidence at the hearing. Further, the single sheet attached to Federal's Reply Brief has no website or description of how the Court can independently verify the information. Thus, the document is in fact subject to reasonable dispute at this time because of the objection and because it cannot be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed.R.Evid. 201.

Even if the Court did take judicial notice of the single sheet purporting to show that Cannon was a licensed producer, this would not justify granting the motion to dismiss. Plaintiff alleges that Cannon and/or Management were responsible for the breach of contract claim with respect to the untimely claim reporting (See Amended Complaint, R.Doc. 6, ¶ 63). Thus, there is no evidence that Management is a producer, or that these were "Producer"-like activities.

**e.** Conclusion

In sum, the Court grants the motion to dismiss in part and finds that Plaintiff's claim for breaching the Service Agreement by negotiating and obtaining specific excess and aggregate excess workers compensation and employers liability reimbursement policies that violated Louisiana law is preempted by La. R.S. 9:5606. However, the Court denies the motion to dismiss the first breach of contract claim for failure to timely report the claim. The Court cannot dismiss this claim at this time without any evidence whatsoever of what insurance agents, brokers, or solicitors do in fact with respect to reporting claims or of whether Cannon and Management were in fact Producers performing Producer-like functions. Accordingly, the Court finds that La. R.S. 9:5606 does not bar the first breach of contract claim. Finally, because the Court dismisses the remaining claims on different grounds, it declines to address whether these are covered by La. R.S. 9:5606.

### 4.  Prescription under La. Civ. Code art. 3492

#### a.  Negligent Performance

Actions in tort are subject to a one-year liberative prescriptive period. La. Civ. Code art. 3492. Cannon argues on numerous grounds that Plaintiff's claims against Cannon are based in tort, namely Plaintiff's claim (1) for failure to timely report the claim to the excess insurer, (2) for violating the Service Agreement by failing to obtain insurance in compliance with certain

insurance regulations, and (3) for aiding and abetting a breach of fiduciary duty. Plaintiff argues that these actions are based in contract and are thus subject to the ten-year liberative prescriptive period of La. Civ. Code art. 3499. Because we find that the first and second claims resound in tort, and because we dismiss the aiding and abetting claim below, the Court denies Cannon's motion to dismiss on this ground.

Cannon first argues that the alleged failure to procure the correct insurance coverage is misfeasance of duty and is a tort. Cannon explains that, prior to the enactment of La. R.S. 9:5606, in *Roger v. Dufrene*, 613 So.2d 947, 949 (La. 1993), the Louisiana Supreme Court held that an insured's action against an insurance agent for failure to procure requested coverage was a claim for alleged misfeasance of duty creating a cause of action in tort subject to one-year prescription. The *Roger* court explained that this was an act of misfeasance. "Nonfeasance was exclusively a breach of contract; misfeasance could be a tort." *Id.* at 949.

In a related argument, Cannon also argues that the negligent performance of a contract can give rise to a tort. Cannon cites to two cases – *Kroger Co. v. L.G. Barcus & Sons, Inc.*, 44, 200 (La.App. 2 Cir. 6/17/09), 13 So.3d 1232, 1235 and *Nicholson & Loup, Inc. v. Carl E. Woodward, Inc.*, 596 So.2d 374, 396 (La.App. 4 Cir. 1992).

However, *Roger*, *Kroger*, and *Nicholson* are each distinguishable. First, in *Roger*, the issue was failure to procure requested coverage. Here, the issue is failure to timely report a claim to an excess carrier. Second, *Roger* involved an insurance agent. Here, Cannon and Management were third-party administrators governed by twenty-eight page Service Agreement. Third, in *Roger*, the petition expressly alleged that the failure to provide insurance coverage as requested was a negligent act. Here, Plaintiff has filed suit asserting a breach of contract and, as discussed below, identified specific provisions of the contract that were breached. Finally, in

*Roger*, the Court expressly determined that this was not an action of nonfeasance because the agent had taken certain actions, even though they were the wrong ones.  Here, at least with the failure to timely report, the case involves an instance of nonfeasance.

*Kroger* and *Nicholson* are likewise distinguishable.  While both cases held that the actions arose *ex delicto*, neither involved the breach of specific provisions of a contract.

The Fifth Circuit has explained:

> The correct prescriptive period to be applied in any action depends on the nature of the action; it is the duty breached that should determine whether an action is in tort or contract. The classical distinction between contractual and delictual damages is that the former flow from an obligation contractually assumed by the obligor, whereas the latter flow from a violation of general duty owed by all persons.
> …
> Where a claim for breach of contract exists, plaintiff is entitled to plead his case for damages *ex contractu* and assert the ten-year statute of limitations applicable to actions for breach of contract. However, in order for the ten-year statute of limitations applicable to actions for breach of contract to apply, plaintiff has the burden to prove that the defendant breached some contractual duty above and beyond a general duty not to damage another's property.

*Terrebonne Parish School Bd. v. Mobile Oil Corp.*, 310 F.3d 870, 886-887 (5ᵗʰ Cir. 2002) (citations omitted).  "Even when a contract exists, unless a *specific* contract provision is breached, Louisiana treats the action as tort." *Richard v. Wal–Mart Stores, Inc.*, 559 F.3d 341, 345 (5th Cir.1999) (citing *Trinity Universal Ins. Co. v. Horton*, 33, 157 (La.App. 2 Cir. 4/5/00), 756 So.2d 637, 638).

Thus, in *City of Alexandria v. Cleco Corp.*, No. 1:05-cv-01121, 2010 WL 290506, at *9 (W.D.La. Jan. 22, 2010), the district court denied a motion for summary judgment on certain counts and held that they were subject to a ten-year prescriptive period.  The defendant argued that the plaintiff's claims resounded in tort rather than contract.  The Court disagreed, however, because the plaintiff alleged that the defendant violated specific provisions of the contract.  The

Court explained, "[i]n order to maintain a claim for breach of contract, the claimant must allege that the defendant breached a particular contractual provision or duty." *Id.* (citing *Richard*, 559 F.3d at 345).

Similarly, in *Nicholson*, the Court explained: "Where cause of action arises from breach of a promise set forth in contract, the action is 'ex contractu', [sic] but where it arises from a breach of duty growing out of contract, it is 'ex delicto'. [sic]" *Nicholson & Loup, Inc.*, 596 So.2d at 396 (citing *Black's Law Dictionary*, p. 566-567 (6th ed. 1990)).

In sum, the case law shows that, where the Plaintiff alleges the breach of specific provisions of the contract, then the action is *ex contractu* and subject to the ten-year liberative prescriptive period.

Here, Plaintiff alleges the breach of specific provisions of the Service Agreement. The Amended Complaint alleges that,

> Through the Service Agreement, ESIF and [Management] described their relationship and the duties owed by [Management] to ESIF, including: … (2) [Management] agreed to coordinate and report to excess insurance carriers; … and (5) [Management] agreed to "use its best efforts to procure, secure, and place for Client … excess insurance policies written by an insurer or insurers authorized or approved to transact business in the state… in such amount as may be necessary to satisfy any applicable requirements of the Regulatory Authority.

(R.Doc. 6, ¶ 21). In his Opposition to the Motion to Dismiss, the Plaintiff identified the specific provisions of the Service Agreement that these allegations are linked to (R.Doc. 6, p. 28 and 30). Thus, unlike *Roger*, *Kroger*, and *Nicholas*, these claims do not arise from the breach of general duties but from specific contractual promises. Accordingly, the Court rejects Cannon's argument.

**b.** Breach of Statutory Duty

Cannon cites a number of cases holding that a breach of a statutory duty is a tort subject to one year prescription. The most recent and highest authority cited by the Defendant is *MCI Communications Servs., Inc. v. Hagan*, 11-1039 (La. 10/25/11), 74 So.3d 1148, 1155. The Defendant claims the duty at issue here arose from La. Admin Code. tit. 40, pt. I, § 1713 ("the retention of specific excess policies shall be no more than $25,000).

While the Court dismissed the claim that Cannon breached the agreement by obtaining insurance in compliance with regulatory laws, the Court will nevertheless address Cannon's argument. Cannon is correct that the breach of a statutory duty is a tort, but the argument misses the mark. Here, Plaintiff alleges not the pure breach of a statutory tort but rather the breach of a specific contractual provision that happens to require regulatory compliance. The contractual element makes this case distinguishable from *MCI*, which specifically stated in a footnote that it was not answering whether plaintiff had a cause of action in contract. *Id.* at 1155 n. 11. Accordingly, the Court rejects this argument.

**c. Direct Action Statute**

Cannon next argues that the Direct Action Statute applies only to tort actions. Cannon asserts that, by brining suit under the Direct Action Statute, Plaintiff is conceding it is a tort. Plaintiff argues that the Direct Action Statute can apply to contract disputes.

As will be discussed below, the Direct Action Statute applies only to tort actions. The fact that Plaintiff argues that the Direct Action applies to contract disputes is not a concession that this is a tort action. The Court rejects Cannon's argument on this ground.

**d.** Aiding and Abetting Breach of Fiduciary Duty

Finally, Cannon cites to one case stating that aiding and abetting breach of fiduciary duty is a tort. Thus, Cannon argues, the claim is prescribed. Because we concluded *infra* that the Plaintiff fails to state a claim for aiding and abetting breach of fiduciary duty, the Court declines to address whether this is a tort that has prescribed.

### 5. Failure to State a Claim – "Notice Prejudice" Rule

Cannon argues that, if the claims against it are not perempted or prescribed, then the claim for failure to timely report the Ryan claim to the excess carrier should still be dismissed because the Amended Complaint does not show that the excess insurer was actually prejudiced by the allegedly late notice.

Cannon cites *American Safety & Risk Services, Inc. v. Legion Indem. Co.*, 153 F.Supp.2d 869 (E.D.La 2001). In *American*, the Defendant insurer moved for summary judgment seeking dismissal of all claims made against them, arguing that there is no coverage because plaintiffs failed to comply with the notice requirements in their policies. The Court explained:

> "Under Louisiana law, the insurer cannot deny coverage merely because its insured failed to give notice of loss as soon as practicable." *Peavey Company v. M/V ANPA*, 971 F.2d 1168, 1172 (5th Cir.1992) (citations omitted). (footnote omitted) "Rather, to deny coverage on the basis that it did not receive notice as stipulated in the policy, the insurer must show 'actual prejudice.' " *Id.* (citations omitted). … Accordingly, defendants must show that they were prejudiced by the delay, and they have made no showing in this regard. Therefore, they are not entitled to summary judgment on this issue.

*Id.* at 877-878.

The Plaintiff responds by quoting *Peavey Co. v. M/V ANPA*, 971 F.2d 1168, 1172 (5th Cir. 1992): "Under Louisiana law, the insurer cannot deny coverage merely because its insured failed to give notice of loss as soon as practicable. … Rather, to deny coverage on the basis that it did not receive notice as stipulated in the policy, ***the insurer*** must show 'actual prejudice.'"

(citations omitted) (emphasis added). Plaintiff argues that it has not sued the excess insurer for denial of benefits; rather, it has alleged that Cannon/Management breached the Service Agreement by failing to timely report the claim and that ESIF was harmed as a result. Thus, the notice-prejudice rule is inapplicable. Alternatively, Plaintiff seeks leave to amend to show actual prejudice.

Plaintiff's argument is more persuasive and should prevail. The notice-prejudice rule is a shield for insureds to prevent an insurer from denying claims on a technicality. Cannon is trying to use it as a sword against an insured when the insurer is not even part of the action. This is an action against Cannon as a third party administrator for breach of contract. What Cannon is arguing is almost better characterized as an affirmative defense to the damages claim – i.e., even if everything Plaintiff says is true, then Plaintiff still cannot recover because it could have fought the excess insurer.

In sum, Plaintiff has stated a cause of action for breach for contract for Cannon and/or Management's failure to timely report claims to ESIF's excess insurer. The motion to dismiss on this ground is denied.

### 6. Failure to State a Claim – Aiding and Abetting Breach of Fiduciary Duty

Relying primarily but not exclusively on *Broyles v. Cantor Fitzgerald & Co.*, No. 10-85, 2013 WL 2422858 (M.D. La. June 3, 2013) (Brady, J.), Defendants argue that Louisiana law does not recognize a claim for aiding and abetting breach of fiduciary duty in the absence of a conspiracy.

The Plaintiff argues (1) that *Broyles*'s discussion concerning aiding and abetting is dicta because the Court applied New York and Delaware law; (2) Defendants should not rely on *Guidry v. Bank of LaPlace*, 94-1758 (La.App. 4 Cir. 9/15/95), 661 So.2d 1052, 1057; and (3)

conspiracy and aiding and abetting are distinct concepts under the laws of other courts, so there is a cause of action for the aiding and abetting breach of fiduciary duty claim.

First, the Plaintiff is incorrect about *Broyles*. This case applied Louisiana law. See *Broyles*, 2013 WL 2422858, at *2 ("[A]lthough Louisiana does not recognize a claim for aiding and abetting a breach of fiduciary duty, Louisiana's policies favor the application of Louisiana law in this instance. … The Court finds that these policies require application of Louisiana law for the reasons already discussed.").

Second, the Plaintiff is wrong to disagree with *Guidry*, and, third, aiding and abetting and conspiracy are not distinct concepts under Louisiana law. In *Guidry*, the Court stated, "In the absence of a conspiracy, there is no distinct cause of action for aiding and abetting under Louisiana law." 661 So.2d at 1057. The Plaintiff is correct that the Court provided no authority for this proposition and that the court held that certain jury charges related to aiding and abetting were erroneous.

However, other cases seem to indicate that *Guidry* was correct and that "aiding and abetting" requires proof of a conspiracy. In *National Union Fire Ins. Co. of Pittsburg v. Hibernia National Bank, N.A.,* No. 01-0788, 2001 WL 34085607, at *6 (W.D.La. Nov. 28, 2001), the Court dismissed an aiding and abetting claim and explained:

> Count 6 of the Amended Complaint includes a claim against Hibernia for "aiding and abetting breach of fiduciary duty." Louisiana jurisprudence holds that an aiding and abetting claim is derived from La. Civ.Code art. 2324, which provides:
>
>> He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
>
> Given the language of the Article, "conspiracy is required before liability can be imposed under Louisiana law for aiding and abetting ." *C & D Sales & Service, Inc. v. McDonald,* 95 F.3d 1308, 1316 (5th Cir.1996). And the jurisprudence interpreting Article 2324 "clearly requires an agreement (a meeting of the minds)

or collusion between the parties for the purpose of committing wrongdoing."
*Stephens v. Bail Enforcement of L.A.*, 690 So.2d 124, 131 (La.App. 1st Cir.1997).

Because there was no allegation of collusion by the defendant, the Court dismissed the allegation of aiding and abetting.

Finally, other Middle District precedent supports the Defendant's position. In *Matthews v. Bancorpsouth Bank*, No. 09-910, 2010 WL 797790, at *8 (M.D. La. Mar. 1, 2010) (Brady, J.), the Court held that certain defendants were improperly joined because there was no basis to recover claims against them. One such claim was a claim for conspiracy to aid principals in breaching their fiduciary duties to the plaintiff. The Court explained:

> La. C.C. art. 2324 regarding liability for conspiracies is limited to conspiracies involving tortious conduct and does not extend to alleged breaches of fiduciary duty.FN15
>
> FN15. See, *Louisiana v. Guidry*, 489 F.3d 692, 706-707 (5th Cir.2007)("Even after the revision of article 2324, Louisiana courts continue to recognize that its application is limited to conspiracies involving tortious conduct ... We therefore affirm the district court's summary judgment dismissal of the State's cause of action for [defendant]'s conspiracy to breach the fiduciary duty of another, as "lack[ing] an essential element-an underlying tort." The Fifth Circuit specifically recognized that an action for breach of fiduciary duty arises from the special relationship between a fiduciary and the one who claims the duty [or "principal"] and therefore arises in contract (or quasi-contract), rather than tort).

*Id.* at *8.

In sum, Plaintiff's arguments are incorrect. The aiding and abetting claim should be dismissed.

### 7. Failure to State a Claim – Unjust enrichment

Defendant argues that, under Louisiana law, there is no cause of action for unjust enrichment if another remedy is available to the plaintiff. The Plaintiff does not really address the unjust enrichment argument in his briefs but stated at oral argument that it was pled in the alternative.

The Defendant is correct about the law. *See SJB Grp., L.L.C. v. TBE Grp., Inc.*, No. 12-181, 2013 WL 6194571, at *16 (M.D.La. Nov. 26, 2013) (Dick, J.) (explaining that "Unjust enrichment is a remedy of 'last resort' and 'only applicable to fill a gap in the law where no express remedy is provided" and dismissing Plaintiffs' claims because they had other remedies at law available to them.). Because the Plaintiff has breach of contract claims, the unjust enrichment claims should be dismissed.

### C. Federal and Navigator's Motion to Dismiss (R.Docs. 21)

Federal and Navigators claim they should be dismissed because these are contract claims and the Direct Action Statute only applies to tort claims. They cite a host of cases stating that the Direct Action Statute applies only to tort claims and not to contract disputes. *E.g., Black Crystal Co. Inc. v. Assuranceforeningen Skuld*, 57 F.App'x 212, 2003 WL 151203, at *1 (5th Cir. 2003) ("[T]he Direct Action Statute does not apply to breach of contract cases.); *Taylor v. Fishing Tools, Inc.*, 274 F.Supp. 666, 673 (E.D.La.1967) ("But the Direct Action Statute does not apply to all claims of any nature whatever just because an insurer is a defendant. … Since the Louisiana statute applies only to tort claims and not to claims for breach of contract, we must look to the nature of the claims asserted here to see if the statute applies.."); *Holland Am. Ins. CO. v. Succession of Roy*, 777 F.2d 992, 995 (5th Cir. 1985) ("The Louisiana Direct Action Statute, La. Rev. Stat.Ann. 22:655, applies only to torts and not to contract disputes. …")

Further, as Cannon stated in its brief, the Louisiana Supreme Court stated in *Green v. Auto Club Group Ins. Co*, 2008-2868 (La. 10/28/09), 24 So.3d 182, 184 (La. 2009), that "[t]he Direct Action Statute 'was enacted to give special rights to tort victims, not to insureds with contract claims against a defendant.'"

In response, the Plaintiff argues that the Court should follow the plain language of the Direct Action Statute, which says it applies to "injured person[s]." Plaintiff claims there is no explicit reference to torts in the statute. "Injury" is defined by *Black's Law Dictionary* 789 (7th ed. 1999) as "[t]he violation of another's legal right, for which the law provides a remedy […,] a wrong or justice […,] or harm or damage." According to Plaintiff, this definition applies with equal force in contract actions. Plaintiff did, however, acknowledge in oral argument the mountain of cases reaching the opposite conclusion.

As explained above, the Court finds that Plaintiff asserts breach of contract claims, not tort claims. Accordingly, under the above authority, the Direct Action statute does not apply. While the Court admires Plaintiff's dedication to civilian principles and refusal to bow to jurisprudence, this Court cannot ignore the pronouncements of the Louisiana Supreme Court and the Fifth Circuit. The Court grants Federal and Navigators' motion to dismiss.

### D. Conclusion

For the above reasons,

**IT IS ORDERED** Motion to Refer to the Bankruptcy Court Pursuant to 28 U.S.C. § 157 and LR83.4.1 (R.Doc. 17) is **DENIED;**

**IT IS FURTHER ORDERED** that Federal Insurance Company's Motion to Dismiss (R.Doc. 18) is **GRANTED** and that all claims by Plaintiff against Federal Insurance Company are dismissed;

**IT IS FURTHER ORDERED** that Defendant, Navigators Specialty Insurance Company's Motion to Dismiss (R.Doc. 21) is **GRANTED** and that all claims by Plaintiff against Navigators Specialty Company are dismissed; and

**IT IS FURTHER ORDERED** that Cannon Cochran Management Services, Inc.'s FRCP Rule 12(b)(6) Motion to Dismiss (R.Doc. 22) is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's claims against Cannon (1) breach of the Service Agreement by negotiating and obtaining specific excess and aggregate excess workers compensation and employers liability reimbursement policies that violated Louisiana law, (2) for aiding and abetting a breach of fiduciary duty, and (3) for unjust enrichment are dismissed.  In all other respects, Cannon's motion to dismiss is denied.

Signed in Baton Rouge, Louisiana, on <u>November 6, 2014</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**